ORDERED.

Dated: March 30, 2018

Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br><br>Nicholas Sinclair Fields and<br>Yhotzmine Elizabeth Fields,<br><br>    Debtors.<br>_____/ | Case No. 8:14-bk-09347-MGW<br>Chapter 7 |
| Christine L. Herendeen,<br>as Chapter 7 Trustee,<br><br>    Plaintiff,<br><br>v.<br><br>Specialized Loan Servicing, LLC,<br><br>    Defendant.<br>_____/ | Adv. No. 8:15-ap-00446-MGW |

**MEMORANDUM OPINION AND
ORDER VACATING SUMMARY JUDGMENT
<u>ON TELEPHONE CONSUMER PROTECTION ACT CLAIM</u>**

The Court previously granted summary judgment in the Trustee's favor on her

claim against Specialized Loan Servicing under the Telephone Consumer Protection

Act. Ordinarily, the Trustee would have been entitled to $25,000 in statutory damages ($500 per phone call multiplied by 50 phone calls). But in its final judgment, the Court specifically found that the Trustee was entitled to treble damages because Specialized Loan Servicing willfully violated the TCPA by making 50 calls to the Debtors on their cell phone without their consent. So the Court awarded the Trustee treble damages. On reconsideration, Specialized Loan Servicing points out there was no record evidence that any of the telephone calls were made without the Debtors' consent. Because the Trustee failed to meet her burden of showing that the 50 calls were made without consent, the Court must reconsider its finding of a willful TCPA violation and vacate its treble damages award.

## Undisputed Facts

On August 12, 2014, the Debtors filed for chapter 7 bankruptcy.[1] The Debtors listed Specialized Loan Servicing ("SLS") on Schedule D as having a claim secured by a mortgage on nonhomestead property.[2] At the Debtors' 341 meeting of creditors, the Trustee asked the Debtors if they had problems with any of their creditors calling them "a lot."[3]

The Debtors responded that SLS called them "constantly."[4] According to the Debtors' 341 testimony, SLS called them on their cell phone seven to eight times a

---

[1] Doc. No. 1.

[2] *Id.* at Schedule D.

[3] Adv. Doc. No. 37-1 at 17 – 18.

[4] *Id.* at 18.

2

day, seven days a week between August 2012 and July 2014, even after the Debtors told SLS that they couldn't pay and to stop calling.[5] Based on the Debtors' 341 testimony, the Trustee sued SLS for allegedly violating the Florida Consumer Collection Practices Act and the Telephone Consumer Protection Act.[6]

The Trustee moved for summary judgment on her FCCPA and TCPA claims.[7] In support of her summary judgment motion, the Trustee principally relied on (1) a transcript from the Debtors' 341 meeting; and (2) various requests for admissions that were deemed admitted because SLS failed to respond.[8] The record evidence established that SLS called the Debtors on their cell phone at least 50 times between August 1, 2012 and July 31, 2014 using an automated or predictive caller and that SLS called the Debtors at least once after the Debtors said to stop calling them.[9]

Nobody appeared at the summary judgment hearing on SLS's behalf. Absent opposition by SLS, the Court granted summary judgment in favor of the Trustee on her FCCPA and TCPA claims.[10]

---

[5] *Id.* at 18 – 20.

[6] Adv. Doc. No. 1.

[7] Adv. Doc. No. 37.

[8] Adv. Doc. Nos. 37-1 & 37-2.

[9] Adv. Doc. No. 37-2.

[10] Adv. Doc. No. 41.

Two weeks after the Court granted summary judgment, SLS moved for reconsideration.[11] The thrust of the SLS's reconsideration motion was that the Trustee failed to properly serve her summary judgment motion.[12] The Court ultimately denied SLS's reconsideration motion and refused to vacate entry of summary judgment.[13]

Ordinarily, the Trustee would have been entitled to $500 in statutory damages per phone call. Since SLS admittedly made 50 phone calls to the Debtors' cell phone, the Trustee was entitled to a $25,000 judgment on her TCPA claim. But in its final judgment, the Court specifically found that SLS made the 50 calls without the Debtors' consent, entitling the Trustee to $75,000 in treble statutory damages for a willful violation of the TCPA ($1,500/per phone call x 50 phone calls).[14]

SLS again seeks reconsideration, this time of the Court's final judgment.[15] In its motion, SLS correctly points out that the Court's award of treble damages under the TCPA hinges on its finding that SLS's violation of the TCPA was willful. And that finding, in turn, hinged on the Court's finding that SLS made 50 calls to the Debtors on their cell phone without the Debtors' consent. But SLS says there is no

---

[11] Adv. Doc. No. 43.

[12] *Id.* at ¶¶ 15, 18 & 20 – 30.

[13] Adv. Doc. No. 50.

[14] Adv. Doc. No. 64 at ¶¶ 2 & 9.

[15] Adv. Doc. No. 66.

record evidence to support the finding that it called the Debtors on their cell phone 50 times without their consent.

SLS's point is a nuanced one: Although SLS concedes that the record establishes that it made 50 phone calls to the Debtors' cell phone and that at least one of those calls came after the Debtors said to stop calling, SLS says the record doesn't establish when the Debtors told SLS to stop calling. Without knowing when the Debtors told SLS to stop calling, it is impossible to know how many calls were made without consent and therefore in willful violation of the TCPA.

Whether SLS is entitled to reconsideration of the willfulness finding turns on the parties' respective burdens on summary judgment. Because it raised consent as an affirmative defense, SLS says the Trustee was required to disprove that the calls were made without the Debtors' consent.[16] And on this record, SLS says the Trustee could not do that. The Trustee, for her part, argues that the date the Debtors told SLS to stop calling is irrelevant because she is not required to disprove SLS's affirmative defenses.[17] Neither party has it quite right.

## Conclusions of Law

Nearly twenty-five years ago, in *Fitzpatrick v. City of Atlanta*,[18] the Eleventh Circulated provided a thorough discussion of the burdens the moving and non-

---

[16] Adv. Doc. No. 66 at 10.

[17] Adv. Doc. No. 70 at 3 – 4.

[18] 2 F.3d 1112, 1115 – 16 (11th Cir. 1993).

moving parties bear on summary judgment. The *Fitzpatrick* Court broke its discussion down into two categories: (1) issues on which the movant bears the burden of proof at trial;[19] and (2) issues on which the nonmovant bears the burden of proof at trial.[20]

For issues on which the movant bears the burden of proof at trial, the movant must come forward with credible evidence that, if not controverted at trial, would entitle the movant to a directed verdict.[21] If the movant satisfies that burden, then the nonmovant must come forward with sufficient evidence to call into question the inference created by the movant's evidence.[22]

For issues on which the nonmovant bears the burden of proof at trial, the movant has two options.[23] First, the movant may simply point out that there is an absence of evidence to support the nonmovant's claim or defense.[24] Second, the movant may support its summary judgment motion with affirmative evidence demonstrating that the nonmovant will be unable to prove its claim or defense at trial.[25] Assuming the movant met its burden, then the nonmovant's burden depends on how the movant did so.

---

[19] *Id.* at 1115.

[20] *Id.* at 1115 – 16.

[21] *Id.* at 1115.

[22] *Id.* at 1116.

[23] *Id.* at 1115 – 16.

[24] *Id.*

[25] *Id.*

If the movant put on affirmative evidence, then the nonmovant must respond with evidence sufficient to withstand a motion for directed verdict.[26] If the movant simply pointed to the absence of evidence supporting the nonmovant's claim or defense, then the nonmovant must either (1) show that the movant overlooked or ignored evidence in the record that would withstand a motion for directed verdict; or (2) come forward with sufficient evidence to withstand a motion for directed verdict.[27]

Before turning to whether the parties met their respective burdens, the Court must first discuss the role consent played in this case. The parties' focus has been on consent as an affirmative defense. That makes sense because SLS did assert consent as an affirmative defense. But consent is also a component of the Trustee's claim to the extent the Trustee seeks treble damages for a willful TCPA violation.

For its conduct to be willful, SLS had to know its conduct violated the TCPA:

> Indeed, as the Eleventh Circuit has specified, "[t]he requirement of 'willful or knowing' conduct requires the violator to know he was performing the conduct that violates the statute."[28]

The Trustee disputes that point, contending that simply showing that SLS knew it was calling the Debtors on their cell phone using an automated dialer is sufficient to

---

[26] *Id.* at 1116.

[27] *Id.* at 1116 – 17.

[28] *McBeth v. Credit Prot. Ass'n*, 2015 WL 4429324, at *3 (M.D. Fla. July 20, 2015) (quoting *Lary v. Trinity Physical Fin. & Ins. Servs.,* 780 F.3d 1101, 1107 (11th Cir. 2015)).

establish willfulness.[29] Not so. To prove willfulness, the Trustee was required to show, for example, that SLS did not have consent to call the Debtors' cell phone.[30]

So where does that leave us? Had the Trustee not sought treble damages for a willful TCPA violation, then consent would have been relevant only as an affirmative defense. And in that case, SLS would have had the burden of proof. But since the Trustee sought treble damages, she had the burden of proof on consent since consent effectively was an element of establishing willfulness.

Here, the Trustee sought treble damages but failed to come forward with evidence showing a lack of consent. To be sure, there was record evidence that SLS called the Debtors at some point after they said to stop calling. But we don't know how many times because there was no record evidence establishing when the Debtors told SLS to stop calling. Because the Trustee didn't establish when the Debtors told SLS to stop calling, there was a genuine issue of material fact whether SLS willfully violated the TCPA. So it is appropriate to reconsider and vacate the treble damage award.[31]

Accordingly, it is

**ORDERED**:

1.   Specialized Loan Servicing's motion for reconsideration is GRANTED.

---

[29] Doc. No. 70 at 4.

[30] *McBeth*, 2015 WL 4429324, at *3.

[31] The Court also believes it is appropriate to reconsider two additional findings: one SLS called the Debtors after being notified they had retained counsel; and another that SLS made false and misleading statements. Upon review of the record, neither finding was supported by record evidence.

  2. The Court vacates its treble damages award. By separate order, the Court will schedule a trial on whether Specialized Loan Servicing's violation of the TCPA was willful.

  3. The Court also vacates its final judgment to the extent it contains findings that Specialized Loan Servicing: called the Debtors after being notified they had retained counsel; and made false and misleading statements.

> Attorney R. Carter Burgess is directed to serve a copy of this Memorandum Opinion and Order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of this Memorandum Opinion and Order.

**R. Carter Burgess, Esq.**
**Gabriel M. Hartsell, Esq.**
 McGlinchey Stafford
*Counsel for the Defendant*

**Kenneth C. Grace, Esq.**
 Lash Wilcox & Grace PL
*Counsel for the Plaintiff*